UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jerry Plemmons, | ) C/A No. 9:15-2914-BHH-BM |
|           Plaintiff, | ) |
| vs. | ) **REPORT AND RECOMMENDATION** |
| CO Lovin; Capt Rodgers; DHO Man, *of Evans Correctional Inst.*, | ) |
|           Defendants. | ) |

The Plaintiff, Jerry Plemmons, proceeding pro se and in forma pauperis, brings this action pursuant to 42 U.S.C. § 1983. He is an inmate at the Evans Correctional Institution (ECI), part of the South Carolina Department of Corrections (SCDC). Plaintiff alleges a violation of his constitutional rights.

Under established local procedure in this judicial district, a careful review has been made of the pro se Complaint pursuant to the procedural provisions of 28 U.S.C. § 1915 and § 1915A, the Prison Litigation Reform Act, Pub.L. No. 104–134, 110 Stat. 1321 (1996), and in light of the following precedents: Denton v. Hernandez, 504 U.S. 25 (1992), Neitzke v. Williams, 490 U.S. 319 (1989), Haines v. Kerner, 404 U.S. 519 (1972), Nasim v. Warden, Maryland House of Corr., 64 F.3d 951 (4th Cir. 1995), and Todd v. Baskerville, 712 F.2d 70 (4th Cir. 1983). Pro se complaints are held to a less stringent standard than those drafted by attorneys, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a pro se complaint to allow the development of a potentially meritorious case. Hughes v. Rowe, 449 U.S. 5, 9 (1980); Cruz v. Beto, 405 U.S. 319 (1972); Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555–56 (2007)).

However, even when considered pursuant to this liberal standard, for the reasons set forth herein below this case is subject to summary dismissal. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. See Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990); see also Ashcroft v. Iqbal, 556 U.S. 662 (2009) [outlining pleading requirements under the Federal Rules of Civil Procedure].

### Allegations of the Complaint

Plaintiff alleges that Defendant Officer Lovin conducted a "shakedown" of his cell on September 29, 2014, during which time Plaintiff and his cellmate "Jasson" were instructed to strip.[1] The officer found a few items of contraband on inmate Jasson, and Jasson accepted the charges as to those items. The officer also found two small pieces of sandpaper and a few rags on Plaintiff. Plaintiff contends that these were hobby craft items, that inmates were allowed to possess hobby craft items when Plaintiff was previously incarcerated at ECI (in 2002), and that while the ECI rules changed thereafter, he was not informed of the new rules at the time he was transferred back to ECI. Plaintiff alleges he gave Defendants his hobby craft "papers" (which he appears to assert gave him permission to have hobby craft items), which were ignored, and that Lt. Graves took the paperwork and did not return it. Complaint, ECF No. 1 at 3.

---

[1] Plaintiff asserts that the cell door was not closed all the way (and the window on the door was not covered) such that "others" were looking in at them, but has not made any claim or alleged any constitutional violation concerning this procedure. See also Peckham v. Wisconsin Dep't of Corrs., 141 F.3d 694 (7th Cir.1998) [strip searches constitutional absent evidence they were performed for purposes of harassment or punishment]; Franklin v. Lockhart, 883 F.2d 654 (9th Cir.1989) [approving twice-a-day visual body cavity searches for inmates in disciplinary and administrative segregation]; Michenfelder v. Sumner, 860 F.2d 328, 332–333 (9th Cir.1988) [strip searches when entering and leaving cells not excessive even if prisoner escorted from one portion of a unit to the next].

2

Plaintiff alleges that Inmate Jasson subsequently pled guilty to the charges against him and Defendant Captain Rogers gave Jasson 30 days, but that he [Plaintiff] refused to take a plea, so Captain Rogers sent Plaintiff to the Disciplinary Hearing Officer (DHO). Plaintiff alleges that at his disciplinary hearing, the DHO refused to telephone Lt. Graves to ask about the hobby craft paperwork, and the paperwork was not admitted into evidence. The DHO sentenced Plaintiff to "90 90 90." It was Plaintiff's first charge ever in his thirty-three years of incarceration. ECF No. 1 at 3-5. Plaintiff alleges that he was told his state pay would be stopped for 90 days, but was later told by "the financial lady Ms. Hooks" that he would no longer receive state pay. ECF No. 1 at 4. Plaintiff does not specify what relief he requests, but appears to be asking that his inmate pay be restored.

### **Discussion**

Plaintiff alleges that he was denied due process because he was not allowed to present the hobby craft paperwork as evidence at his disciplinary hearing. Disciplinary proceedings which implicate a protected liberty interest demand due process. See Wolff v. McDonnell, 418 U.S. 539 (1974). However, to prevail on a due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action; Beverati v. Smith, 120 F.3d 500, 502 (4th Cir.1997); and when the punishment imposed does not cause the original sentence to be enhanced, protected interests will generally be limited to freedom from restraint that imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Sandin v. Conner, 515 U.S. 472, 484 (1995)[holding that disciplinary segregation did not present the type of atypical, significant deprivation in which a state might create a liberty interest].



3

Here, Plaintiff has not alleged the loss of good time credits, while the SCDC Disciplinary Report and Hearing Record confirms that he received sanctions of loss of 90 days each of canteen, phone, and visitation privileges, with no loss of good time. ECF No. 1-1 at 37. As such, no violation of a protected liberty interest has been presented. Plaintiff does not have a liberty interest in making phone calls. See U.S. v. Alkire, No. 95-7885, 1996 WL 166400, at *1 (4th Cir. Apr.10, 1996)[no constitutional right to the use of a telephone in prison]; Hadley v. Peters, 70 F.3d 117 (7th Cir. 1995)[Table]["The denial of telephone privileges for ten days is not a matter of constitutional dimension."], cert. denied, 517 U.S. 1111 (1996). Additionally, neither prisoners nor would-be visitors have a constitutional right to visitation. Kentucky Dep't of Corrs. v. Thompson, 490 U.S. 454, 461, (1989)[finding no right to visitation guaranteed by the Due Process Clause]; but see also, White v. Keller, 438 F.Supp. 110, 115 (D.Md.1977) [leaving open the possibility that a permanent ban on all visitation could implicate the Eighth Amendment], aff'd, 588 F.2d 913 (4th Cir.1978). Nor does Plaintiff have a constitutional right to canteen access. See, e.g., Madison v. Parker, 104 F.3d 765, 768 (5th Cir.1997) [an inmate's commissary restrictions "do not implicate due process concerns"]; Goodwin v. Schwartz, C/A No. 8:10–1760–CMC–BHH, 2010 WL 3489092, at * 2 (D.S.C. Aug. 11, 2010)["Canteen access is not a protected liberty interest."], adopted by 2010 WL 3489097 (D.S.C. Sept.1, 2010).

While Plaintiff may also be attempting to assert that he was denied a "protected" interest because his inmate pay was taken from him, a state prisoner possesses no constitutional right to be paid for his labor. Anderson v. Morgan, No. 89–6737, 1990 WL 29173, at *1 (4th Cir. Mar. 6, 1990) (citing Manning v. Lockhart, 623 F.2d 536, 538 (8th Cir.1980)); see Piatt v. MacDougall, 773 F.2d 1032, 1035 (9th Cir. 1985)[holding that the state does not deprive a prisoner of a

4

constitutionally protected liberty interest by forcing him to work without pay];see also Cosco v. Uphoff, 195 F.3d 1221, 1224 n.3 (10th Cir. 1999) [noting that an inmate has no property interest in his or her prison job]; Alley v. Angelone, 962 F.Supp. 827, 834 (E.D.Va.1997)[prisoner did not have a protected interest in continued employment because lack of employment was clearly within the range of confinement which could be expected by most inmates]. Rather, any such compensation provided "'is by the grace of the state.'" Taylor v. Robinson, No. 02–CV–510, 2003 WL 23314150, at *4 (E.D.Va. Apr. 4, 2003)(quoting Hrbek v. Farrier, 787 F.2d 415, 416 (8th Cir. 1986)). Thus, under the Due Process Clause, Plaintiff has no property interest in earning wages for his labor. Washlefske v. Winston, 234 F.3d 179, 184–85 (4th Cir. 2000)[noting that, although private citizens ordinarily have a constitutionally protected property interest in the wages earned from their labor, inmates do not]; see McLaughlin v. Royster, 346 F.Supp. 297, 311 (E.D.Va. 1972)[explaining that an institution may constitutionally force a validly convicted inmate to perform work, with or without pay, so long as the work assignment amounts to no cruel and unusual punishment under the Eighth Amendment] (citing Holt v. Sarver, 309 F.Supp. 362 (E.D.Ark. 1970)); see also Izard v. Blair, 173 F.3d 429 (6th Cir. Feb. 3, 1999)(unpublished)[because an inmate had no constitutionally protected right to a particular prison wage, he lacked a liberty interest in its continuation].

Plaintiff also asserts in the Complaint that he was subjected to "double jeopardy" because both he and his cellmate were charged for having the same contraband. While, under the Fifth Amendment to the United States Constitution, a person may not be twice put in jeopardy of life or limb for the same offense, this language has in general terms been interpreted to bar prosecution in the following three situations:

1. Where a person would be tried for the same offense after an acquittal;



5

      2. Where a person would be tried for the same offense after a conviction; or

      3. Where a person would receive more than one punishment for the same offense.

See Benton v. Maryland, 395 U.S. 784 (1969); North Carolina v. Pearce, 395 U.S. 711, 716 (1969), overruled on other grounds by Alabama v. Smith, 490 U.S. 794 (1989)[holding Double Jeopardy clause imposes no limits on retrying defendant who has succeeded in getting first conviction set aside]. None of these situations is present in the allegation Plaintiff has set forth in his Complaint.

    Further, to the extent Plaintiff may be attempting to assert an equal protection claim because his cellmate only received 30 days of sanctions while he received 90 days of sanctions, an equal protection claim arises when, without adequate justification, similarly-situated persons are treated differently by a governmental entity. U.S. Const. amend XIV; Morrison v. Garraghty, 239 F.3d 648, (4th Cir. 2001) ["To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination."]. Additionally, when the distinction is based on a "suspect classification" or effects the denial of a fundamental right, the constitutional scrutiny sharpens in focus to determine whether the "classification has been precisely tailored to serve a compelling governmental interest." See Plyler v. Doe, 457 U.S. 202, 216-17 (1982). However, when a plaintiff is not a member of a suspect class, he must prove that the distinction between himself and another was not reasonably related to some legitimate penological purpose. See Turner v. Safley, 482 U.S. 78, 89 (1987). Here, Plaintiff has not asserted that he is a member of a protected class, and allegations or even evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or



6

invidious discrimination, is insufficient to show discriminatory intent. McCleskey v. Kemp, 481 U.S. 279, 292 (1987). In any event, Plaintiff admits that his cellmate pled guilty to the charges. Conversely, while Plaintiff was also offered a plea agreement (he was offered a plea deal with 30 days of sanctions - ECF No 1-1 at 36 ), he chose to proceed to a disciplinary hearing.

Further, granting Plaintiff the liberal construction of his pleadings to which he is entitled as a pro se litigant, it is possible that he is also complaining about the processing of his SCDC grievances. Plaintiff claims that he was not able to get copies made of certain papers (he states that the institution was under a quarantine at the time), such that he was unable to submit paperwork in a timely fashion. However, Plaintiff fails to state a constitutional claim concerning the grievance system or the processing of his grievances, as it is well-settled that prison inmates have no federal constitutional right to have any inmate grievance system in operation at the place where they are incarcerated. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); see also Smith v. Ray, 36 F. App'x 99 (4th Cir. 2002) ("[A]ccess to the grievance procedure is not a constitutionally protected right[.]"); Oliver v. Myers, No. 7:08–CV–558, 2008 WL 5212409, at *4 (W.D.Va. Dec. 12, 2008) [stating that "because state grievance procedures are separate and distinct from state and federal legal procedures, an institution's failure to comply with state grievance procedures does not compromise its inmates' right of access to the courts"], appeal dismissed, 335 F. App'x 317 (4th Cir. 2009). Simply because a state or local authority chooses to establish an inmate grievance system, that choice does not confer a substantive constitutional right on prison inmates. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). Hence, if corrections officials fail to properly apply an inmate grievance procedure, such failure is not actionable under § 1983. See Spencer v. Moore, 638 F. Supp. 315, 316 (E.D.Mo. 1986). Further, even if Plaintiff has alleged a violation of SCDC policy

7

and the Court were to assume that Defendants' actions violated that policy, any violation of such policies does not constitute a violation of Plaintiff's constitutional rights, and is therefore not assertable in a § 1983 action. See Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992); cf. Johnson v. S.C. Dep't of Corrs., No. 06–2062, 2007 WL 904826 at *12 (D.S.C. Mar. 21, 2007)[The plaintiff's allegation that defendants did not "follow their own policies or procedures, standing alone, does not amount to a constitutional violation."](citing Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)[if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue]).

### Recommendation

Based on the foregoing, it is recommended that the Court dismiss Plaintiff's Complaint without prejudice and without issuance and service of process.

Plaintiff's attention is directed to the important notice on the next page.

_____
Bristow Marchant
United States Magistrate Judge

August 27, 2015
Charleston, South Carolina



8

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).



9